E-FILED
Monday, 24 September, 2018 09:42:22 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| TRACY HOLDINGS LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:16-CV-03100 |
| WEST BEND MUTUAL INSURANCE COMPANY, | ) |
| Defendant. | ) |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Plaintiff Tracy Holdings LLC's Motion for Summary Judgment (d/e 24) and Defendant West Bend Mutual Insurance Company's Motion for Summary Judgment (d/e 35). The mend the hold and waiver doctrines do not preclude Defendant from relying on the Continuous or Repeated Seepage or Leakage of Water exclusion. Because the undisputed facts show that the exclusion applies, the damage to Plaintiff's property is not covered under the insurance policy. Therefore, Defendant's Motion

for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.

## I. JURISDICTION

The parties are completely diverse. Plaintiff is an Illinois limited liability corporation. "For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members." Thomas v. Guardsmark, LLC, 487 F.3d 531, 534 (7th Cir. 2007). Joseph P. Tracy and Jill A. Tracy are the sole owners and members of Plaintiff, and they are both citizens of Illinois. See Aff. of Joseph P. Tracy (d/e 20-1). Defendant is incorporated in Wisconsin and maintains its principle place of business in West Bend, Wisconsin. See Notice of Removal ¶ 6 (d/e 1). The amount in controversy exceeds $75,000. Based on these facts, subject-matter jurisdiction exists pursuant to the Court's diversity jurisdiction. 28 U.S.C. § 1332.

Venue is proper in the Central District of Illinois, Springfield Division, because a substantial part of the events or omissions giving rise the claim occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

## II. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). No genuine issue of material fact exists if a reasonable jury could not find in favor of the nonmoving party. Brewer v. Bd. of Trs. of the Univ. of Ill., 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. Blasius v. Angel Auto., Inc., 839 F.3d 639, 644 (7th Cir. 2016).

In this case, the parties filed cross-motions for summary judgment. Therefore, the Court must view all facts and draw all reasonable inferences in the light most favorable to the Plaintiff when reviewing Defendant's Motion and in the light most favorable to the Defendant when reviewing Plaintiff's Motion. See

Gazarkiewicz v. Town of Kingsford Heights, Ind., 359 F.3d 933, 939 (7th Cir. 2004).

## III. FACTS AND BACKGROUND

The property that is the subject of this lawsuit is a 64-room Hampton Inn hotel located at 225 South 4th Street, Quincy, Illinois, (the Property) owned by Plaintiff. The Property was built in 1999. Stanley Seibert is the Operations Manager for Plaintiff and the General Manager of the Property.

On December 4, 2014, Defendant issued an insurance policy to Plaintiff effective January 1, 2015 to January 1, 2016, Policy No. BOC069121310 (the Policy), for the Property. In the Policy, Defendant agreed to insure Plaintiff against damage to the Property and any resulting loss of Plaintiff's business income. The Policy provides that Defendant "will pay for direct physical loss or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." The Policy defines Covered Causes of Loss as:

> Risks of direct physical loss unless the loss is:
>
> a. Excluded in Paragraph **B.** Exclusions in Section **I**; or
>
> b. Limited in Paragraph **4.** Limitations in Section **I.**

On April 7, 2015, Plaintiff was having room 123 of the Property renovated. After removing drywall around the window, Plaintiff discovered severe darkening and cracking of the wood framing around the window of room 123. Seibert testified that the damage to room 123 was not caused by a recent storm event and the damaged wood appeared to have been exposed to water on more than one occasion. He also testified that the damage to room 123 would have taken a long stretch of time to occur. All disclosed experts in this case testified that improper design, installation, construction and/or maintenance of the roof system and/or the EIFS (exterior insulation and finishing system) was the primary or secondary cause of the damage at the Property.

Plaintiff hired Blackline Construction to perform remediation repairs to the Property for the water damage. The total amount for the contracted remediation work was $917,370.29. In addition, because of the water damage to the Property, the guest rooms could not be rented until all necessary repairs were completed. Plaintiff's claim for lost business income totaled $183,971.

Approximately two to three years prior to April 7, 2015, Plaintiff first noticed wallpaper curling around the windows of several rooms, including room 123. Plaintiff also noted that the area around the windows was cool to the touch, almost moist. Around this time, Plaintiff had the windows re-caulked because they were giving off dampness. Plaintiff suspected moisture was causing the wallpaper to curl around the windows.

Plaintiff first noticed a leak in the ceiling of room 123 starting around 2013. The leak in the ceiling of room 123 was recurring and would resurface every two or three months up until the discovery of the condition in room 123 on April 7, 2015.[1] Plaintiff undertook an investigation as to the source of the leak in room 123 but was unable to identify the source prior to the discovery of the

---

[1] In response to Defendant's Statement of Undisputed Fact No. 5, Plaintiff only admitted that the leak would resurface every two to three months. Plaintiff denied the remainder of Defendant's Statement of Undisputed Fact No. 5. However, Plaintiff did not support its denial with "evidentiary documentation referenced by specific page" as required by Local Rule. See CDIL-LR 7.1(D)(2)(b)(2). Moreover, Seibert did, in fact, testify that the ceiling leak was a recurring problem and resurfaced every two to three months. See Seibert Dep. at 64 (d/e 27-1, p. 17 of 35) ("Q. So it was a recurring problem? A. Yes."); at 65 ("Q. How frequently did it-- did the fact that there was a leak become apparent to you in Room 123? A. You know, it might – it might surface every two to three months."). Therefore, the Court considers the fact undisputed.

condition in room 123 on April 7, 2015.  Plaintiff asserts it only learned of the interior room damage on April 7, 2015.

On April 7 or April 8, 2015, Seibert reported the claim to his agent at Winters Insurance Agency, who notified Defendant of the property loss claim.  On July 6, 2015, senior claim representative Jason Toft sent Seibert a letter stating that Defendant had determined that the claim for damages at the Property was not covered.  According to Defendant, the water damage did not enter the building from a Covered Cause of Loss.  In addition, Defendant communicated that the exclusions and limitations contained within the Policy were additional reasons for denial and listed certain exclusions and limitations.  The letter also contained the following statement:

> Nothing in this letter is intended to be, nor should be construed as, a waiver of any of the terms or conditions of your policy of insurance.  West Bend Mutual Insurance expressly reserves all rights, conditions, and defenses it may have now or those that may become apparent through additional investigation.

Plaintiff hired Engineering Evaluations, Inc., to perform an inspection of the property after receiving the July 6, 2015 denial letter.  Plaintiff forwarded the report to Defendant for review.

On September 24, 2015, Mark Johnston, who was at that time a regional claims representative with Defendant, sent another denial letter to Seibert indicating that Defendant's position was still that the damages were not covered under the Policy. Defendant again stated that the water entering the building was not a Covered Cause of Loss. Defendant relied on policy exclusions and limitations to further preclude coverage and listed certain exclusions and limitations. The letter also provided:

> Please understand that by making specific reference to certain language and sections contained within your policy, West Bend Mutual Insurance Company neither waives, nor shall it be estopped from, raising other exclusions, conditions, limitations, or provisions of your policy or the facts of this specific claim. Further, nothing in this letter is intended to be, nor should be construed as, a waiver of any of the terms or Conditions of your policy of insurance. West Bend Mutual Insurance expressly reserves all rights, Conditions, and defenses it may have now or those that may become apparent through additional investigation or claim handling.

Neither denial letter specifically referenced the exclusion for Continuous or Repeated Seepage or Leakage of Water.

In March 2016, Plaintiff filed a Complaint in the Circuit Court of the Eighth Judicial Circuit, Adams County, Illinois, alleging breach of an insurance policy and a violation of 215

ILCS 5/155 (providing for attorney's fees, costs, and an additional penalty for unreasonable and vexatious delay in settling or paying a claim).  Plaintiff seeks damages for replacement costs, repairs, and loss of business.  Plaintiff also seeks attorney's fees and penalties under Section 155.

On April 12, 2016, Defendant removed the cause of action to this Court.  Defendant filed an Answer and raised several affirmative defenses based on Policy exclusions and limitations, including the exclusion for Continuous or Repeated Seepage or Leakage of Water, which provides as follows:

**B. Exclusions**

\* \* \*

2. We will not pay for loss or damage caused by or resulting from any of the following:

\* \* \*

**p. Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

(Continuous or Repeated Leakage exclusion). In addition, Defendant identified in its Initial Rule 26((A)(1) disclosures the identities of certain witnesses who may have information regarding the history of water infiltration and damages and identified David Ellermann as having information regarding "his findings as documented in his June 11, 2015 written report." Rule 26 Disclosures (d/e 40-1). Ellermann's report noted that the "extent of deterioration is indicative of long-term, intermittent exposure to moisture." Report (d/e 28, p. 45 of 45).

On June 2, 2017, Plaintiff took the deposition of Matt Johnston, who was, at the time of his deposition, a regional claims manager with Defendant. Defendant's own counsel asked Johnston whether all of the bases for Defendant's decision to deny coverage were fully set forth in the denial letters, and Johnston testified that they were:

> Q. And, to the best of your knowledge, all the bases for West Bend's decision to deny coverage are fully set forth in the correspondence that has been issued to Mr. Seibert, correct? And that being your letter of September 24, 2015, and Mr. Toft's letter of July 6, 2015, correct?
>
> A. Correct, to Mr. Seibert, who is a representative of Hampton Inn and Irish House, Tracy Holdings, LLC, d/b/a/.

>      Q. And the basis for denying the coverage is a result of the policy exclusions cited in your letters contained in the policy of insurance that was purchased by the insured. Correct?
>
>      A. Correct.

Johnston Dep. at 80 (d/e 34-2, p. 20 of 21).

In June 2018, the parties filed cross-motions for summary judgment.

## IV. ANALYSIS

Although the parties raise numerous issues in their motions for summary judgment, the Court finds that this case is resolved by analyzing the Continuous or Repeated Leakage exclusion.

Plaintiff argues that Defendant is precluded from relying on the Continuous or Repeated Leakage exclusion under the mend the hold[2] and waiver doctrines. Specifically, Plaintiff argues that Defendant did not claim the Continuous or Repeated Leakage exclusion in any pre-suit letters and "buried" the exclusion in its affirmative defenses. Plaintiff asserts that it will be prejudiced if

---

[2] "[T]he phrase is a nineteenth-century wrestling term, meaning to get a better grip (hold) on your opponent." Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 362 (1990).

Defendant is allowed to rely on the exclusion because Plaintiff had no notice of Defendant's reliance on the Continuous or Repeated Leakage exclusion before the lawsuit. Plaintiff also argues prejudice because Johnston testified during the litigation that Defendant was relying on what was previously stated in the denial letters.

The mend the hold doctrine does not apply here. In Illinois,[3] the mend the hold doctrine "preclude[s] insurers from denying a claim on one basis and then changing [the] basis for denial during litigation if there is evidence of unfair surprise or arbitrariness." Title Ind. Assurance Co., R.R.G. v. First Am. Title Ins. Co., 853 F.3d 876, 885 (7th Cir. 2017) (internal quotation marks and citations omitted). However, the doctrine does not bar an insurance company from adding a defense after being sued. Ryerson Inc. v. Fed. Ins. Co., 676 F.3d 610, 614 (7th Cir. 2012) ("To require a potential defendant to commit irrevocably to defenses before he is sued would be unreasonable to the point of absurdity."). Moreover, a change of defense does not harm a party if, when denying coverage, the insurance company reserved the right to add

---

[3] The parties agree that Illinois law applies in this diversity action.

supplemental grounds for the denial. Id. ("When there is no prejudice to the opposing party, invoking the doctrine of mend the hold to bar a valid defense is overkill."); see also Tobi Eng'g, Inc., v. Nationwide Mut. Ins. Co., 214 Ill. App. 3d 692, 696 (1991) (stating that "an insurer is not required to assert all of its defenses to liability in a letter to its insured").

    Here, although Defendant did not identify the Continuous or Repeated Leakage exclusion in the denial letters, the letters specifically reserved the right to raise other defenses or exclusions. Defendant identified the Continuous or Repeated Leakage exclusion as one of its affirmative defenses, and that affirmative defense was listed with no less prominence than any other affirmative defense. Moreover, Johnston's testimony did not change the bases for denial during the lawsuit, as he merely testified that the bases for the denial were contained in the denial letters. In addition, Defendant's discovery disclosures evidenced an intent by Defendant to rely on the exclusion. Because Plaintiff had ample notice of the defense, Plaintiff cannot show unfair surprise, arbitrariness, or prejudice. The case cited by Plaintiff, Title Ind. Assurance Co., R.R.G., 853 F.3d at 885, is distinguishable because the insurance company in

that case did not raise the prior notice provision until it filed its motion for summary judgment and only alluded to the provision in its answer to the counterclaim.

Plaintiff also argues that Defendant waived reliance on the Continuous or Repeated Leakage exclusion. Waiver is the voluntary relinquishment of a known right. See Home Ins. Co. v. Cincinnati Ins. Co., 213 Ill. 2d 307, 326 (2004). In the denial letters, Defendant specifically reserved the right to raise additional defenses and specifically raised the exclusion in its Affirmative Defenses. Those actions do not constitute waiver.

Plaintiff has not shown that Johnston's testimony regarding his personal belief about the bases for the denial of coverage constitutes an intentional relinquishment by Defendant of its affirmative defense that the Continuous or Repeated Leakage exclusion applied. Johnston testified as to his personal belief of the bases for denial. He did not testify under Federal Rule of Civil Procedure 30(b)(6) as to the insurance company's position. See, e.g., PPM Fin., Inc. v. Norandal USA, Inc., 297 F. Supp. 2d 1072, 1085–86 (N.D. Ill.), aff'd, 392 F.3d 889 (7th Cir. 2004) (a Rule

30(b)(6) witness "testifies as to the corporation's position on the matters set forth in the Rule 30(b)(6), not his personal opinion").

Turning to the merits, Plaintiff argues that, even if Defendant is allowed to rely on the Continuous or Repeated Leakage exclusion, the ensuing loss suffered by Plaintiff is still covered. As stated above, the Continuous or Repeated Leakage exclusion provides that Defendant will not for loss or damage caused by or resulting from:

> Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

An ensuing loss clause creates an exception to a policy exclusion and thereby limits the scope of what is excluded under the policy. Moda Furniture LLC v. Chicago Title Land Trust Co., 2015 IL App (1st) 140501 (2015). For example, in Moda, the exclusion for faulty workmanship contained an ensuing loss clause that provided that "[if] an excluded cause of loss * * * results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss." Moda, 2015 IL App (1st) 140501, ¶ 8. The court ultimately concluded that the ensuing loss clause was ambiguous and construed the provision in favor of

coverage.  Id. ¶ 12 (involving damage to inventory during a roof repair when the roofer failed to protect the premises).

Here, however, the Continuous or Repeated Leakage exclusion does not contain an ensuing loss clause, although another provision of the Policy does.  Compare Policy Section I, B. 2(p) (Continuous or Repeated Leakage exclusion) with Section I, B. 3 (the Negligent Work exclusion in Section I, B. 3 (providing that "if an excluded cause of loss listed in paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss" where paragraphs a. through c. pertained to weather conditions, acts or decisions, and negligent work).  Nothing in the Policy suggests that the ensuing loss clause contained in the Negligent Work exclusion applies to the Continuous or Repeated Leakage exclusion.

Under Illinois law, when construing an insurance policy, the court must ascertain and give effect to the intentions of the parties as expressed in their agreement.  Hobbs v. Hartford Ins. Co. of the Midwest, 214 Ill. 2d 17 (2005).  Illinois courts construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.

Rich v. Principal Life Ins. Co., 226 Ill.2d 359, 371 (2007). If the terms of the policy are clear and unambiguous, then Illinois courts give the terms their plain and ordinary meaning. Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd., 223 Ill.2d 407, 416 (2006).

Here, construing the Policy as a whole and giving the terms their plain and ordinary meaning, the Court finds that the Continuous or Repeated Leakage exclusion does not contain an ensuing loss clause. The ensuring loss clause pertaining to Negligent Work is contained in an entirely separate subsection of the Exclusions section of the Policy. The Policy contains no language suggesting that the ensuing loss clause in the Negligent Work exclusion is incorporated into the Continuous or Repeated Leakage exclusion.

Plaintiff does not raise any other arguments to Defendant's claim that the Continuous or Repeated Leakage exclusion applies. The undisputed facts show years of leaks and dampness in room 123. Seibert testified that the damaged wood appeared to have been exposed to water on more than one occasion and that the damage to room 123 would have taken a long time to occur. In addition, other evidence in the summary judgment record also

supports this conclusion. See Ellermann Dep. at 136 (d/e 28, p. 34 of 45) (testifying that the deterioration of the wall framing in room 123 would have taken several years of water infiltration); at 143 (d/e 28, p. 36 of 45) (testifying that the damage to the five rooms he inspected was an accumulation of several years of exposure to water); Report (d/e 28, p. 45 of 45) ("The extent of deterioration is indicative of long-term, intermittent exposure to moisture."). Plaintiff points to no evidence that would create a genuine issue of material fact on whether the water damage was the result of repeated and ongoing water leaks and/or the presence of moisture over a period of 14 days or more. Therefore, Defendant is entitled to summary judgment. See Johnson Press of Am., Inc. v. N. Ins. Co. of New York, 339 Ill. App.3d 864, 873 (2003) (finding that fungal growth on wood indicated that "plaintiff had allowed water infiltration to occur for more than 14 days" as specified under the exclusion for continuous or repeated seepage or leakage of water that occurred over a period of 14 days).

### V. CONCLUSION

For the reasons stated, Defendant West Bend Mutual Insurance Company's Motion for Summary Judgment (d/e 35) is

GRANTED and Plaintiff Tracy Holdings LLC's Motion for Summary Judgment (d/e 24) is DENIED.  The Clerk is directed to enter judgment.  This case is closed.

**ENTERED: September 24, 2018**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**